UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COMPETITIVE TECHNOLOGIES, INC., : | |
| Plaintiff, : | |
| v. : | |
| : | Civil Action No. 3:07cv1327 |
| BENJAMIN MARCOVITCH, BETTY RIOS : | |
| VALENCIA, JOHN DEREK ELWIN, : | |
| AGROFRUT, E.U., and SHELDON STRAUSS : | |
| Defendants. : | |

## RULING ON MOTION TO DISMISS

Defendants Benjamin Marcovitch, Betty Rios Valencia, John Derek Elwin, III, and Agrofrut E.U. (collectively, the "Defendants")[1] move pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), and 12(b)(5) to dismiss Plaintiff's First Amended Complaint [Doc. No. 24] on account of Plaintiff's failure to properly effect service and for lack of jurisdiction. Defendants' Motion to Dismiss [Doc. No. 29] is DENIED.

**BACKGROUND**

On August 31, 2007, Plaintiff filed its Complaint [Doc. No. 1], superceded by the First Amended Complaint [Doc. No. 24], alleging securities fraud, conversion, fraud in the inducement/misrepresentation, conspiracy, unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conspiracy to breach fiduciary duty, and violation of the Connecticut Unfair Trade Practices Act, among others. On September 20, 2007, Plaintiff filed a Motion for Prejudgment Remedy [Doc. No. 7] and Motion for Disclosure of Assets [Doc. No. 9]. The Court

---

[1] In the First Amended Complaint filed October 30, 2007, Plaintiff added an additional Defendant, Sheldon Strauss. [Doc. No. 24.] Mr. Strauss is not among the four Defendants moving to dismiss in the instant motion.

ordered a hearing on the motions for October 22, 2007. [Doc. No. 10.] On October 10, 2007, Plaintiff filed Certificates and Affidavits of Service indicating that each of the four Defendants had been served Summons and the Complaint between September 18, 2007 and October 5, 2007, and that each of the four Defendants had also been served the Motion for Prejudgment Remedy and Motion for Disclosure of Assets between October 4, 2007 and October 5, 2007. [Doc. Nos. 11-18.] Counsel for Defendants appeared on October 19, 2007. [Doc. No. 19.] On Defendants' oral motion, the Prejudgment Remedy Hearing was continued to December 7, 2007. [Doc. Nos. 21-23.] On October 30, 2007, Plaintiff filed its First Amended Complaint. [Doc. No. 24.] Defendants filed the instant Motion to Dismiss on November 15, 2007 [Doc. No. 29], and on November 29, 2007 filed a Motion to Stay the Prejudgment Remedy Hearing [Doc. No. 43] pending the resolution of the Motion to Dismiss. The Court denied the Motion to Stay on December 4, 2007. [Doc. No. 48.]

During the prejudgment remedy hearing, John Nano, the Chairman, President, and CEO of Plaintiff Competitive Technologies, Inc., testified regarding the facts establishing probable cause for a prejudgment remedy, including facts forming the basis for the Court's personal jurisdiction over Defendants. (Transcript of Prejudgment Remedy Hearing, December 7, 2007, at 34-39.) [Doc. No. 60.] Counsel for Defendants was present but declined to participate, citing the Court's lack of jurisdiction on account of insufficient service of process as alleged in the pending Motion to Dismiss, notwithstanding the fact that the Court had previously denied Defendants' Motion to Stay the hearing on that basis, and denied the Motion to Stay a second time when Defendants orally renewed it at the start of the prejudgment remedy hearing. [Doc. Nos. 48, 50-51.] The Motion for Prejudgment Remedy and Motion for Disclosure of Assets were granted. [Doc. Nos. 54-55.]

## STANDARD OF REVIEW

**Personal Jurisdiction**

When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving that the court has jurisdiction over the defendant. *See* Amerbelle Corp. v. Hommel, 272 F. Supp. 2d 189, 192 (D. Conn.2003); Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566-67 (2d Cir.1996); Ensign-Bickford Co. v. ICI Explosives USA, Inc., 817 F. Supp. 1018, 1026 (D. Conn.1993). A plaintiff can make this showing through his "own affidavits and supporting materials" Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir.1981), containing "an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." Metro. Life Ins., 84 F.3d at 567. All pleadings, affidavits, and allegations are construed "in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). When a motion to dismiss is based on pleadings and affidavits, dismissal is appropriate only if the submissions, when viewed in the light most favorable to the plaintiff, fail to make a prima facie showing of personal jurisdiction over the defendants. *See* Distefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir.2001).

**Service of Process**

When the defendant raises a challenge to the sufficiency of process, the plaintiff bears the burden of proving its adequacy. *See* Mende v. Milestone Technology, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). A Rule 12(b)(5) motion to dismiss will be granted if the plaintiff fails to serve a copy of the summons and complaint on a defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure. Rzayeva v. U.S., 492 F. Supp. 2d 60, 74 (D. Conn. 2007). Rule 4(m) provides that if service is not made upon a defendant within 120 days after the filing of the complaint, the

court, upon motion "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time."

DISCUSSION

**Personal Jurisdiction**

While Defendants state in the Motion to Dismiss that they move pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), and 12(b)(5), they have not briefed the issue of lack of jurisdiction except as it arises from insufficient service of process. Nonetheless, Defendants purport in a footnote to "reserve [the] right" of Defendants Elwin and Marcovitch "to challenge the exercise of this Court's *in personum* jurisdiction" as to them. (Mot. to Dismiss, FN 1.) [Doc. No. 29.] Defendants state that "Because the issue of insufficiency of process is particularly clear, no Defendant in this case raises in this Motion other issues or bases for dismissing the Complaint or First Amended Complaint brought against them." Id.

The Federal Rules of Civil Procedure do not permit a party making a Rule 12 motion to reserve the right to challenge personal jurisdiction in a subsequent motion to dismiss. "If a party makes a motion under [Rule 12] but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof." Fed. R. Civ. P. 12(g). Personal jurisdiction is not among those defenses listed in Rule 12(h)(2) which cannot be waived, but is instead considered waived pursuant to 12(h)(1) if omitted from a motion in the circumstances described in Rule 12(g).

Additionally, the Court is free to deny a motion or portion thereof that is not adequately briefed. D. Conn. L. Civ. R. 7(a)(1). ("Failure to submit a memorandum may be deemed sufficient cause to deny the motion.") Defendants' cursory statement in a footnote that Mr.

Elwin's termination agreement precludes the Court's personal jurisdiction over him is not sufficiently elaborated to provide a basis for dismissing the case against him. (Mot. to Dismiss, FN 1.) [Doc. No. 29.] Plaintiff has made a prima facie showing of the Court's personal jurisdiction over Defendant Elwin through testimony that he was employed during the relevant time period as a marketing director at Plaintiff's Fairfield, Connecticut office. (Transcript of Prejudgment Remedy Hearing, December 7, 2007, at 36.) [Doc. No. 60.] In addition, while the Court need not reach this issue, Plaintiff argues that the termination agreement was void *ab initio* on account of the fraud in which Mr. Elwin was participating, and also that Mr. Elwin breached the contract. (Pl.'s Opp. at FN 3.) [Doc. No. 49.]

Defendant Marcovitch intimates that "absent the defective service of process [he] could assert his rights to establish that there is no basis for personal jurisdiction over him as well." (Mot. to Dismiss, FN 1.) [Doc. No. 29.] Defendant Marcovitch's stated objection to the Court's personal jurisdiction over him is, in its entirety, that he "has no agreement consenting to the jurisdiction of this court." Id. However, this argument, even if it were more fully developed, does not support a finding of a lack of personal jurisdiction, given that Plaintiff has offered testimony that Mr. Marcovitch was a member of the board of Competitive Technologies and participated in meetings with Plaintiff in Connecticut in that capacity. Defendants do not purport to reserve the right to challenge personal jurisdiction as to Defendants Rios Valencia and Agrofrut, E.U., so presumably they do not contest the Court's jurisdiction over these Defendants, aside from the service of process issues.

**Service of Process**

Defendants move for dismissal for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5)[2] on the basis that Plaintiff has not complied with Rule 4. With the exception of Defendant Elwin, Defendants state that they are residents of Colombia and must be served pursuant to Rule 4(f). Specifically, Defendants state that service should have been made with letters rogatory in accordance with the Inter-American Service Convention on Letters Rogatory. (Mot. to Dismiss at 5, citing 14 Int'l Leg. Mat. 339 (1975); 18 Int'l Leg. Mat. 1238 (1984).) Plaintiff in some cases contests Defendants' characterization of their residency, and claims that all Defendants have been properly served in the United States consistent with Rule 4(e).

**John Derek Elwin, III**

The Certificate of Service for Mr. Elwin [Doc. No. 11] shows that a private process server hired by Plaintiff delivered the Summons and Complaint to Melissa Elwin, who is Mr. Elwin's wife, on September 18, 2007 at 2760 Cardinal Circle, Gulf Stream, Florida, 33483. A second Certificate of Service [Doc. No. 12] shows that the Motion for Prejudgment Remedy and Motion for Disclosure of Assets and their related documents were also left by the process server for Mr. Elwin at that address in the care of his wife on October 4, 2007. Florida law permits service to be accomplished by leaving it at a person's "usual place of abode with any person residing therein who is 15 years of age or older." Fla. Stat. Ch. 48.031(1). It also permits

---

[2] While Defendants state that they move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(4) as well as 12(b)(5), their arguments relate solely to dismissal on the basis of 12(b)(5). (*See* Memo. Supp. Mot. to Dismiss at 5, 7, 13.) [Doc. No. 30.] "Technically . . . a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) . . . that deal[] specifically with the content of the summons. A Rule 12(b)(5) motion is the proper vehicle for challenging . . . the lack of delivery of the summons and complaint." Greene v. Wright, 389 F. Supp. 2d 416, 426 (D. Conn. 2005), *citing* 5B Charles Allan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353, at 334 (3d ed. 2004).

substitute service on a spouse in a case such as this "if the spouse requests such service, and if the spouse and person to be served are residing together in the same dwelling." Id. Plaintiff explains that service was made on Mr. Elwin at this Florida address because it was the address he had provided to Plaintiff in the severance agreement that he signed with Plaintiff in June 2007. (Opp. to Mot. to Dismiss at 8.) [Doc. No. 49.]

Defendants contend that Mr. Elwin was not properly served because he and Melissa Elwin "have been physically separated since Mr. Elwin moved out of Florida on or about May 14, 2007." (Memo. Supp. Mot. to Dismiss at 8.) [Doc. No. 30.] By contrast, Mr. Elwin's affidavit states that he has not lived at that Florida address, and that he and Melissa Elwin have not cohabitated, since February 2007. (Elwin Aff., Ex. E to Memo. Supp. Mot. to Dismiss, at ¶¶ 3-4.) [Doc. No. 32.] Defendants make repeated yet vague reference to the fact that Mr. Elwin now resides "outside the continental United States." (Mot. to Dismiss at ¶ 3; Memo. Supp. Mot. to Dismiss at FN 1). More specifically, Mr. Elwin's affidavit states that he currently resides not in a foreign country but in Puerto Rico. (Elwin Aff., Ex. E to Memo. Supp. Mot. to Dismiss, at ¶ 1.) [Doc. No. 32.] John and Melissa Elwin are not divorced, and Mr. Elwin makes no representations in his affidavit regarding the status of their relationship aside from the statement mentioned above that they have not cohabitated since February 2007.

During his testimony at the prejudgment remedy hearing, John Nano, Plaintiff's Chairman, President, and CEO, noted that Mr. Elwin had cashed the severance check that Plaintiff mailed to him at 2760 Cardinal Circle, Gulf Stream, Florida, 33483 in June 2007. (Transcript of Prejudgment Remedy Hearing, at 38-39.) [Doc. No. 60.] This suggests that, at minimum, Mr. Elwin's wife was indeed transmitting to Mr. Elwin documents received for him at the Florida address. Given that Mr. Elwin in June 2007 indicated in his severance agreement that

Plaintiff should use the Florida address to reach him, and that he subsequently cashed a check sent to that address, it was reasonable to use that address in September 2007 and to leave the documents for Mr. Elwin with Mr. Elwin's wife at that address, in conformity with Florida law.

**Benjamin Marcovitch**

According to the Affidavits of Process Server, service was made on Mr. Marcovitch on October 10, 2007 by leaving copies of the summons, complaint, and motions for prejudgment remedy and disclosure of assets with process agent Scott Lascala in care of the Corporation Trust Co. in Wilmington, Delaware. [Doc. Nos. 13 & 14] Corporation Trust Co. is the registered agent of Plaintiff Competitive Technologies, Inc., a Delaware corporation. Mr. Marcovitch is a current or former director[3] of Competitive Technologies, Inc., and Delaware law provides that nonresident current or former directors of Delaware corporations are deemed to have irrevocably consented to service via the corporation's registered agent in any proceeding against the current or former director. 10 Del. C. § 3114(a). Therefore, it is not dispositive that Mr. Marcovitch, according to his affidavit, has "never directed or authorized anyone to accept service of process for [him] in this matter." (Marcovitch Aff. ¶ 9.) [Doc. No. 31, Ex. B to Motion to Dismiss.] Mr. Marcovitch was served in accordance with the provision applicable to current or former nonresident corporate directors, and this fact is not negated by his assertion that he has for three years been a resident of Cali, Colombia. (Marcovitch Aff. ¶ 2.) [Doc. No. 31, Ex. B to Motion to Dismiss.]

---

[3] There is apparently a dispute between the parties regarding whether Mr. Marcovitch is still a member of Plaintiff's board of directors. (Amend. Compl. ¶ 129-130.) [Doc. No. 24.] The Court need not decide this question for the purposes of resolving this motion.

**Betty Rios Valencia**

On September 18, 2007, a process server left copies of the Summons and Complaint for Ms. Rios Valencia at 160 W. Camino Real, Apt. 117, Boca Raton, FL 33432. [Doc. No. 15] On October 4, 2007, copies of the Motions for Prejudgment Remedy and for Disclosure of Assets and their related documents were left by the process server for her at the same address. [Doc. No. 16] This address was a private mailbox, and Florida law provides that "[i]f the only address for a person to be served, which is discoverable through public records, is a private mailbox, substitute service may be made by leaving a copy of the process with the person in charge of the private mailbox, but only if the process server determines that the person to be served maintains a mailbox at that location." Fla. Stat. Ch. 48.031(6). The process server's September 2007 affidavit states that the documents were left with Jonathan Lund,[4] "a person in charge at the recipient's private mailbox," and that this was "the only address known [for Ms. Rios Valencia] after reasonable investigation and after determining that the person or business to be served maintains a mailbox at this location." [Doc. No. 15]

Ms. Rios Valencia states that service on her at the above Florida address was improper because "I reside in Cali, Columbia [sic], where I have made my residence for approximately 3 years." (Rios Valencia Aff., Ex. C to Memo. Supp. Mot. to Dismiss, at ¶ 2.) [Doc. No. 32.] She further states, "I do not reside in the State of Florida and have not resided there in approximately 3 years." Id. at ¶ 3. However, on October 26, 2007, Ms. Rios Valencia renewed her Florida driver's license, listing an address of 20533 Biscayne Boulevard, Unit 284, Miami, Florida, 33180. (Opp. to Mot. to Dismiss, at 9-10.) [Doc. No. 49.] This calls into question the veracity of

---

[4] In the October 4, 2007 service of the additional documents, the individual in charge is identified as "John L." [Doc. No. 16.]

Ms. Rios Valencia's affidavit, especially when considered in conjunction with inconsistencies in other affidavits supplied to the Court by Ms. Rios Valencia in this case.

For example, in one affidavit, she states, "Prior to the transfer of $750,000.00 U.S. to Agrofrut...by Competitive Technologies, Inc...., I had personally loaned approximately $350,000 to Agrofrut (a company of which I am the sole shareholder, sole director and President)." (Aff. of Rios Valencia, Ex. B to Defendants' Motion to Seal and for a Protective Order, ¶ 3.) [Doc. No. 39.] However, the corresponding affidavit from Agrofrut, which was signed by Ms. Rios Valencia as President, states that "Prior to the transfer of the Funds, Betty Rios Valencia had personally loaned approximately $1,000,000 to Agrofrut." (Aff. of Agrofrut, E.U., Ex. D to Defendants' Motion to Seal and for a Protective Order, ¶ 11.) [Doc. No. 39.] Thus, in two affidavits signed on the same day, Ms. Rios Valencia gives two different figures for the amount of money she has loaned to Agrofrut, in one case $350,000, and in the other, $1,000,000.

**Agrofrut E.U.**

According to its affidavit, Agrofrut E.U. (hereinafter, "Agrofrut") is a corporation formed under the laws of the Republic of Colombia, with a principal and only place of business in the Republic of Colombia. (Agrofrut Aff., Ex. D to Motion to Dismiss, ¶¶ 2-3.) [Doc. No. 32.] The affidavit further states that "Agrofrut has no agent for service of process in the United States. Neither Agrofrut's agent for service of process, officers or the director were ever personally served with a summons or complaint in this case nor were any of them personally served with a First Amended Complaint."[5] (Agrofrut Aff., Ex. D to Motion to Dismiss, ¶ 6.) [Doc. No. 32.] The summons and complaint were served on Agrofrut in the care of Betty Rios Valencia at 160

---

[5] Defendants have not identified Agrofrut's agent for service of process or its officers and directors, if any, other than the Defendants.

W. Camino Real, Apt. 117, Boca Raton, FL 33432 on September 20, 2007 [Doc. No. 17], and the motions for prejudgment remedy and disclosure of assets were served in the same manner on October 4, 2007. [Doc. No. 18.] Ms. Rios Valencia is the self-described "sole shareholder, sole director and President" of Agrofrut. (Aff. Rios Valencia at ¶ 3; Aff. Agrofrut at ¶11.) [Doc. No. 39, Ex. B & D to Motion for Protective Order and Motion to Seal.] In addition, Plaintiff testified that Ms. Rios Valencia had represented to Plaintiff that any documents concerning Agrofrut should be sent to her. (Testimony of John Nano at Prejudgment Remedy Hearing, at 37.) [Doc. No. 60.]

Given that Ms. Rios Valencia is the sole shareholder, sole director and President of Agrofrut, making service upon Agrofrut in the care of Ms. Rios Valencia was "reasonably calculated" to provide Agrofrut with notice of the pendency of the action against it, as required by Federal Rule of Civil Procedure 4(f).[6] It appears that Ms. Rios Valencia essentially is Agrofrut; in its recent response to the Court's order to disclose its assets, Agrofrut reports that it has no funds and no real or personal property aside from some office furniture. (Agrofrut Aff. ¶ 5.) [Doc. No. 56.]

**Actual Notice**

Defendants have had actual notice of this action at least since October 19, 2007, when counsel appeared on their behalf. While not dispositive, Plaintiff notes that in addition to the formal service of process described above, Plaintiff made numerous attempts to ensure through other means as well that Defendants received timely notice of the proceedings, including by email, by Federal Express hand delivery to various addresses for Defendants in Florida, Puerto

---

[6] Federal Rule of Civil Procedure 4(h), governing service upon corporations, provides that corporations not within any judicial district of the United States be served pursuant to Rule 4(f).

Rico, and Colombia, and by provision of the documents to individuals purporting to represent Defendants prior to the appearance of Defendants' current counsel. (Opp. to Mot. to Dismiss at 12-16.) [Doc. No. 49.] For example, Plaintiff's counsel represent that they sent an email containing the complaint and summons to Ms. Rios Valencia at chrisanna12@earthlink.net on September 18, 2007, and that she responded soon thereafter to the email, indicating that she, and by extension Agrofrut, had received it and therefore had actual notice of the proceeding at least from that point. (Opp. to Mot. to Dismiss, at 15-16.) [Doc. No. 49.]

These additional efforts appear to be a good faith attempt to reach and notify Defendants of the case. However, to the extent that Plaintiff was aware of at least some of these alternative addresses at the time of service,[7] Defendants argue that they should have used those addresses instead. Defendants state that the alleged defects in service were "an effort to swiftly attempt to obtain pre-judgment relief (to the prejudice of the Movants)." (Mot. to Dismiss at 12.) [Doc. No. 30.] If that was Plaintiff's goal, it was a failure, as nearly three months elapsed between Plaintiff's application for prejudgment remedy and the order, with the delay resulting from a continuance, requested by Defendants, of the prejudgment remedy hearing. Defendants had ample opportunity to prepare to defend the motions for prejudgment remedy and disclosure of assets, and have suffered no prejudice from the alleged insufficiency of service .

Plaintiff also notes that Defendants have not returned waiver of service of summons forms that were sent. (Opp. to Mot. to Dismiss at FN 14, 16, 17.) [Doc. No. 49.] Pursuant to Federal Rule of Civil Procedure 4(d)(2), Defendants have "a duty to avoid unnecessary costs of serving the summons" by waiving service thereof where, as here, they have received written notice and request comporting with the requirements of Rule 4(d)(2). Defendants' execution of

---

[7] *See, e.g.*, Application for Prejudgment Remedy, September 20, 2007, ¶ 1. [Doc. No. 7.]

waivers once they had actual notice of the case would also have prevented the delay and consumption of resources for both parties that attends the briefing and disposition of a motion to dismiss based solely on alleged defects in service of process.

The Court finds that service was adequate and comported with the requirement of due process. Had the Court found otherwise, it would have ordered Plaintiff to cure the defect in service within a reasonable time frame,[8] rather than dismiss the case.

**CONCLUSION**

For the reasons stated herein, Defendants' Motion to Dismiss is DENIED.

SO ORDERED.

Dated at New Haven, Connecticut, January  11 , 2008.

/s/
Peter C. Dorsey, United States District Judge

---

[8] Rule 4(m) provides that the 120 day time limit for service does not apply to service in a foreign country pursuant to Rule 4(f).